**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JAMES N. GRAY COMPANY; GRAY-I.C.E. BUILDERS, INC.; I.C.E. BUILDERS, INC.; LIBERTY MUTUAL INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; VALLEY FORGE INSURANCE COMPANY; SAFECO INSURANCE COMPANY OF AMERICA; ST. PAUL FIRE AND MARINE INSURANCE COMPANY; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No. SACV 13-1966 AG (JPRx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW<br><br>Hon. Andrew J. Guilford<br><br>Courtroom: 　10D<br>Complaint Filed: December 18, 2013<br>Trial Date: 　　June 24, 2015 |

After a bench trial, and under Federal Rule of Civil Procedure 52(a), the Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

The Court makes the following findings of fact, including any findings of fact found in the Conclusions of Law.

1. American Zurich Insurance Company ("Zurich") issued policy no. GLO 3865506-00 to James N. Gray Company for the period October 1, 2002 to October 1, 2003. This policy has a $10,000 deductible which applies to indemnity payments only. (Zurich's Proposed Findings of Fact and Conclusions of Law ("Zurich's FFCL"), Dkt. No. 85, ¶ 1.)

2. I.C.E. Builders ("ICEB") is an insured under the Zurich policy. (*Id.* ¶ 2.)

3. St. Paul Fire and Marine Insurance Company ("St. Paul") issued the following policies to James N. Gray Company:

| Policy No. | Policy Period | Deductible | Trial Exhibit No. |
|---|---|---|---|
| KK04100521 | 10/01/2000-10/01/2001 | $0 | Ex. 3 |
| KK04100725 | 10/01/2001-10/01/2002 | $0 | Ex. 4 |
| KK04100965 | 10/01/2003-10/01/2004 | $25,000 (defense and indemnity) | Ex. 5 |

(*Id.* ¶ 3.)

4. ICEB is an insured under the St. Paul policies. (*Id.* ¶ 4.)

5. St. Paul policy nos. KK04100521 and KK04100725 contain no deductible. (*Id.* ¶ 5.)

6. Travelers Property Casualty Company of America ("Travelers") issued the following policies to Gray, Inc.:

| Policy No. | Policy Period | Deductible | Trial Exhibit No. |
|---|---|---|---|
| VTC2J-CO-5786B961-TIL-04 | 10/01/2004-10/01/2005 | $50,000 (defense and indemnity) | Ex. 6 |
| VTC2J-CO-5786B961-TIL-05 | 10/01/2005-10/01/2006 | $100,000 (defense and indemnity) | Ex. 7 |
| VTC2J-CO-5786B961-IND-06 | 10/01/2006-10/01/2007 | $250,000 (defense and indemnity) | Ex. 8 |
| VTC2J-CO-5786B961-TIL-07 | 10/01/2007-10/01/2008 | $250,000 (defense and indemnity) | Ex. 9 |
| VTC2J-CO-5786B961-TIL-08 | 10/01/2008-10/01/2009 | $250,000 (defense and indemnity) | Ex. 10 |

(*Id.* ¶ 6.)

7. ICEB is an insured under the Travelers policies. (*Id.* ¶ 7.)

8. Liberty Mutual Insurance Company ("Liberty Mutual") issued the following policies to James N. Gray, Inc.:

| Policy No. | Policy Period | Deductible | Trial Exhibit No. |
|---|---|---|---|
| TBZ-651-289605-029 | 10/01/2009-10/01/2010 | $100,000 (indemnity only) | Ex. 11 |
| TBZ-651-289605-020 | 10/01/2010-10/01/2011 | $100,000 (indemnity only) | Ex. 12 |
| TBZ-651-289605-021 | 10/01/2011-10/01/2012 | $100,000 (indemnity only) | Ex. 13 |

(*Id.* ¶ 8.)

9. ICEB was an insured under the Liberty Mutual policies. (*Id.* ¶ 9.)

- 2 -

10. On June 13, 2011, the underlying action, *Robert Molina et al. v. 3M Company et al.*, Los Angeles County Superior Court Case No. BC463374 (the "Molina Action") was filed. (Defendants' Proposed Findings of Fact and Conclusions of Law ("Defs.' FFCL"), Dkt. No. 86, ¶ 20.)

11. The complaint in the Molina Action was amended in August 2012 to add ICE as a Doe defendant. (*Id.* ¶ 21.)

12. The complaint in the Molina Action asserted a negligence count against ICE, which alleged, in part, that:

> [Doe] Defendants were construction contractors, general contractors, and subcontractors performing construction and demolition work at the Boeing facility . . .
>
> In negligently and carelessly conducting such demolition work, Defendants caused toxins, including dust and silica, to enter the air at the Boeing job site . . .
>
> Defendants' negligent conduct . . . was a substantial factor in bringing about, prolonging, and aggravating Plaintiff, Robert Molina's Systemic Vasculitis and Decedent, Santos Plunkett's Systemic Vasculitis and other injuries. (*Id.* ¶ 22.)

13. The complaint further alleged that "[t]hroughout the years Plaintiff, Robert Molina, and Decedent, Santos Plunkett, worked for [Boeing], they were inhalationally and dermally exposed, in the course of performing their usual job duties, to those chemical products . . . which were manufactured, distributed, and/or supplied to their employer by the named defendants . . ." (Zurich's FFCL ¶ 11.)

14. Santos Plunkett was employed by Boeing and its predecessor, McDonnell Douglas Corporation, from 1965 until 2002. (Defs.' FFCL ¶ 23.)

15. Santos Plunkett worked at Boeing's facility at 3855 Lakewood Boulevard, Long Beach, California (the "Lakewood Facility"). (*Id.* ¶ 24.)

16. In January 2002, Santos Plunkett went on sick leave from Boeing and never returned to work at Boeing. (*Id.* ¶ 25.)

17. Beginning in 1986, Robert Molina was employed by Boeing. (*Id.* ¶ 26.)

18. Robert Molina worked in Building 54 at Boeing's facility at 2401 East

1 Wardlow Road, Long Beach, California (the "Wardlow Facility") beginning in 2001. (*Id.* ¶ 27.)

19. Robert Molina continued working at Boeing at least through June 10, 2011. (*Id.* ¶ 28.)

20. ICE, Gray ICE Builders, Inc., James N. Gray Company, Gray Construction, Inc. and their predecessors, successors, assigns, parents, subsidiaries and affiliates (collectively, the "ICE Entities") did not work at either the Wardlow or Lakewood Facilities during the relevant time period, until July 28, 2003 at the earliest. (*Id.* ¶ 30.)

21. ICE elected to have Zurich defend and indemnify it pursuant to *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 52 Cal. Rptr. 2d 690 (1996). (*Id.* ¶ 31.)

22. Zurich paid $499,948.64 in defense costs and an additional $70,000 in indemnity costs in settling the Molina Action on behalf of ICE. (Zurich's FFCL ¶¶ 17-18.)

23. ICE did not tender the Molina Action to Travelers for a defense or indemnity. (*Id.* ¶ 13; Defs.' FFCL ¶ 33.)

24. ICE expressly instructed Travelers not to participate in its defense, as the Travelers policies that arguably might provide potential coverage for the Molina Action are subject to significant deductibles which apply to defense and indemnity. (Defs.' FFCL ¶ 34.)

25. Zurich sought to establish a cost share agreement between itself and other insurers, including Travelers. On January 17, 2013, Zurich's claims handler, Debra Nadwidney, emailed Travelers claims handler Robert Sparkman arguing that Travelers "ha[s] a duty to defend," and that she "d[id] not believe [Travelers] deductibles matter." (*Id.* ¶ 35.)

26. On January 21, 2013, Mr. Sparkman responded to Ms. Nadwidney, stating, in part:

# (reconstructing)
> The Travelers' policies contain deductible provisions that must be satisfied before Travelers would be obligated to perform under the policies (whether having been "selected" by the insured in the first instance or in response to a contribution claim). If your understanding is different, please explain and provide support. Alternatively, what evidence do you have that shows the Travelers' deductible has been satisfied? (*Id.* ¶ 36.)

27. Recital 9 of Zurich's settlement agreement with Liberty Mutual states in part that "Zurich claims that Liberty Mutual is obligated to reimburse Zurich for a time-on-risk share of the defense fees and costs." [Ex. 26] On June 2, 2015, Liberty Mutual and Zurich agreed to a settlement in this contribution action under which Liberty Mutual agreed to reimburse Zurich for a portion of the defense costs incurred by Zurich in the amount of $124,532.07. (Defs.' FFCL ¶ 38.)

**CONCLUSIONS OF LAW**

The Court makes the findings conclusions of law, including any conclusions of law found in the Findings of Fact.

28. In diversity cases, the District Court applies substantive state law to the issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In this instance, the Court applies California law.

29. When an injury is continuous across multiple policy periods, an insured may choose a single insurer to fully defend and indemnify the insured for that injury, subject to the limits of the elected insurer's policies. *Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 49-50 (Cal. Ct. App. 1996). The elected insurer's obligation to pay "all sums" arises from the contracts between it and the insured. *Id.* at 51.

30. The elected insurer may then seek equitable contribution from other insurers whose policies were on the risk during the continuous injury period. *Id.* at 52. The other insurers' liability for equitable contribution arises from principles of equity

and not from contract—there is no contract between the insurers. *Stonewall Ins. Co. v. City of Palos Verdes Estates*, 46 Cal. App. 4th 1810, 1863-64 (Cal. Ct. App. 1996). Those principles are set forth in *Stonewall* and other equitable allocation cases. In contrast, the principles articulated in *Armstrong* govern the relations between Zurich, as the elected insurer, and ICE, its insured. *See Centennial Ins. Co. v. United States Fire Ins. Co.*, 88 Cal. App. 4th 105, 114-15 (2001) ("Although insurers must respond in full to a contractual policy holder's tender of defense, their respective obligations for contribution to other insurers for the costs of defense are entirely separate from their obligations to their insured and are adjusted equitably on the basis of all the circumstances of the case."); *OneBeacon Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App. 4th 183, 204 (2009), as modified on denial of reh'g (July 14, 2009) ("the right of equitable contribution between insurers is not controlled by the contract between the insured and the insurer but by equitable principles."); *Signal Companies, Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 369, 612 P.2d 889 (1980) ("The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. ... Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden.").

31. In California, there is no fixed rule for allocating defense and indemnity in equitable contribution cases. Instead, the trial court exercises its discretion and weighs the equities in order to attain justice and equality among mutually liable insurers. *Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.*, 204 Cal.App.4th 1214, 1231 (2012). Because equitable considerations vary, the California Supreme Court "has declined to formulate a definitive rule for when contribution should be compelled between insurers." *American Int'l Specialty Lines Ins. Co. v. Continental Cas. Co.*, 142 Cal.App.4th 1342, 1365 (2006).

32. California courts have used several allocation methods, each of which is to be applied only when it produces an equitable result given the circumstances. *See Stonewall Ins. Co. v. City of Palos Verdes Estates*, 46 Cal. at 1861-63, 54 Cal. Rptr. 2d at 206) (listing six potential methods adopted by courts to allocate defense costs and indemnity

payments among insurers); *Centennial Ins. Co.,* 88 Cal. App. 4th at 112-113, 105 Cal. Rptr. 2d at 564 (listing the same six allocation methods).

33. In an equitable contribution action between insurance carriers, a "'time on the risk' method . . . ordinarily should be used" to apportion defense and indemnity expenses among the insurance policies that are triggered. *Id.*; *see also Centennial Ins. Co.,* 88 Cal. App. 4th at 113, 105 Cal. Rptr. 2d at 564.

34. Under the "time-on-the-risk" method, apportionment is "based upon the relative duration of each primary policy as compared with the overall period during which the 'occurrences' occurred.'" *Stonewall*, 46 Cal. App. 4th at 1861.

35. Travelers had five policies "on the risk" within the period of the occurrences in the Molina case, and St. Paul had one. The St. Paul policies covering October 2000 - October 2002 expired before the events underlying the Molina Action. Zurich argued that the Court should nevertheless allocate defense costs to St. Paul under those two policies because St. Paul didn't know at the time it learned of the Molina Action that there was no potential for coverage under those policies. The Court finds that such an approach would be inequitable under the circumstances. The insured tendered the defense to Zurich, not to St. Paul. Zurich sought a cost-sharing agreement with St. Paul, which declined to participate. Had St. Paul, Zurich, or the insured conducted even a basic investigation into the Molina Action, it would have found that there was no possibility of coverage under the 2000-2002 St. Paul policies. Thus the Court will require Travelers to contribute to defense and settlement costs on a time-on-the-risk basis from only the six Travelers and St. Paul policies covering the periods from October 2003 - October 2009.

36. The Court also considers "the impact of applicable deductibles and retentions." *Id.* at 1864. At trial, the parties agreed that a time-on-the-risk method is generally appropriate, but proposed competing methods of accounting for the varying deductibles in this case. Defendants argued that the Court should perform a simple two-step process by (1) evenly splitting the costs between each annual policy, then (2)

subtracting the deductibles of each policy to determine whether and how much contribution is owed. Zurich, on the other hand, argued that each policy should bear a proportionate amount of the costs that exceed its deductible. The Court concludes that Zurich's proposed method is appropriate for this case.

37. Defendants' proposed method unfairly penalizes Zurich for initially paying the costs of the Molina action. Most glaringly, it places on Zurich the burden of separately paying each policy's deductible, resulting in a severely lopsided apportionment where Defendants contribute just $34,986 of the $569,948 total costs despite having six of the ten policies at issue. The method perversely rewards Defendants for having numerous policies covering the case. Indeed, had Zurich sought contribution under only the 2003-2004 St. Paul policy, St. Paul would be required by its own methodology to contribute over $200,000. Defendants' proposed method is not equitable.

38. Unlike Defendants' proposed method, Zurich's proposal fairly addresses the various deductibles without penalizing the one insurer that happened to be elected by the insured for defense and indemnity. It ensures that every policy with the same deductible contributes equally, and it fairly accounts for differing deductibles. For instance, since all of the policies at issue have deductibles of $250,000 or lower, all of the policies should evenly split the costs exceeding $250,000. Similarly, since only four policies have deductibles below $25,000, only those four policies should split the costs below $25,000. In sum, Zurich's method of apportionment is fair and reasonable, and the Court applies it to the ten policies "on the risk" to determine the amounts owed by Defendants.

39. Under this method, the defense costs are apportioned as follows:

| Amount of Defense Costs | St Paul Policies | Travelers Policies | Zurich Policies | Liberty Policies | TOTAL | No. of Policies Responding |
|---|---|---|---|---|---|---|
| $0 - $25,000 | $ - | $ - | $ 6,250.00 | $ 18,750.00 | $ 25,000.00 | 4 |
| $25001-$50000 | $ 5,000.00 | $ - | $ 5,000.00 | $ 15,000.00 | $ 25,000.00 | 5 |
| $50,001-$100,000 | $ 8,333.33 | $ 8,333.33 | $ 8,333.33 | $ 25,000.00 | $ 50,000.00 | 6 |
| $100001 - $250,000 | $ 21,428.57 | $ 42,857.14 | $ 21,428.57 | $ 64,285.71 | $ 150,000.00 | 7 |
| $250,001 - $499,948 | $ 24,994.80 | $ 124,974.00 | $ 24,994.80 | $ 74,984.40 | $ 249,948.00 | 10 |
| Total | $ 59,756.70 | $ 176,164.48 | $ 66,006.70 | $ 198,020.11 | $ 499,948.00 | |

40. Because each of Liberty's indemnity deductibles exceeds the entire cost of the settlement in the Molina Action, Liberty's policies do not cover any of the settlement costs. The $70,000 settlement is apportioned evenly to the other seven policies, with each policy contributing $10,000.

41. In sum, St. Paul owes Zurich $59,756.50 in defense costs and $10,000 in indemnity.

42. Travelers owes Zurich $176,164.48 in defense costs and $50,000 in indemnity.

43. At the close of trial and to Zurich's apparent surprise, Travelers challenged the reasonableness of the defense costs and settlement amount. The Court rejects this challenge. The insurer who does not defend or participate in settlement of a potentially covered claim is precluded from challenging the reasonableness of defense expenses or settlement amount paid. *St. Paul Mercury Ins. Co. v. Mountain West Farm Bureau Mut. Ins. Co.*, 210 Cal.App.4th 645, 662 (2010); *United States Auto Ass'n v. Alaska Ins. Co.*, 94 Cal.App.4th 638, 644 (2001). The amounts paid by Zurich in defense ($499,948.64) and indemnity ($70,000) in connection with the *Molina* Case are deemed reasonable.

**DISPOSITION**

Zurich's counsel is directed to prepare the judgment and promptly file and serve it on Travelers and St. Paul. Travelers and St. Paul shall have 14 days from the date of service of the proposed judgment to file any objections to the proposed judgment. If no objections are received within 14 days, the judgment will be entered immediately, and Federal Rule of Civil Procedure 52(b) will apply on entry of the judgment.

Dated August 13, 2015    _____
                        Andrew J. Guilford
                        United States District Judge